UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LONNIE LEE,

      Petitioner,

v.                                   **CASE NO. 8:22-cv-2606-CEH-AEP**

SECRETARY, Department of Corrections,

      Respondent.

                                               /

## O R D E R

Lonnie Lee filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent filed a response opposing Lee's petition along with supporting exhibits. (Doc. 7; Doc. 8, Appendix). Lee replied to the Respondent's response. (Doc. 10). Upon consideration, Lee is entitled to no relief because his claims lack merit.

## I. Procedural History

Lee was charged by information in the Sixth Judicial Circuit in Pinellas County, Florida, with one felony count: murder in the second degree, actual possession and discharge of a firearm, carrying a twenty-five-year mandatory minimum sentence, in

violation of sections 782.04(2) and 775.087(2)(2)3, Florida Statutes. (Ex. 1 at 62).[1] He

proceeded to a jury trial, where he testified he shot the victim, William Headlee, aka

"Porter" (hereafter "Porter"), in self-defense. (Ex. 1a, at 611-651). The jury found Lee

guilty as charged, with findings that he did actually possess and discharge a firearm

during the commission of the offense and, as a result of the discharge, caused death or

great bodily harm (Ex. 1 at 173–74; Ex. 1a at 776–77). At sentencing, Porter's family

testified to the impact of his death on them. (Ex. 1 at 348–434). The trial court

sentenced Lee to a minimum mandatory sentence of 25 years' imprisonment. (*Id.* at

283–86; 430). Lee, via counsel, timely filed a notice of appeal to the Second District

Court of Appeal for the State of Florida ("Second District"). (*Id.* at 303).

Lee's counsel filed an initial brief based on one claim for relief:

> THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT THE
> APPELLANT'S MOTION FOR JUDGMENT OF AQUITTAL AND
> RENEWED MOTION FOR JUDGMENT OF AQUITTAL.

(Ex. 2). Lee argued that: (i) there was insufficient evidence to rebut his testimony of

self-defense, and (ii) there was insufficient evidence that he acted with a depraved

mind. (*See id.*). The State of Florida ("the State") filed an answer brief (Ex. 3) and Lee

filed a reply brief (Ex. 4). The Second District issued its opinion, per curiam affirmed,

---

[1]  Unless otherwise cited, the exhibits referred to in this Order can be found in the appendix to docket
entry 8.

in *Lee v. State*, 240 So. 3d 655 (Fla. Dist. Ct. App. 2017) (Table). (Ex. 5). Lee did not

seek certiorari review in the United States Supreme Court.[2]

Lee, however, filed a pro se motion for post-conviction relief under Rule 3.850

of the Florida Rules of Criminal Procedure in the trial court, seeking to vacate his

judgment and sentence. (Ex. 11). He raised six grounds of ineffective assistance of

counsel:

> GROUND ONE:
> INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO FILE A PRETRIAL MOTION SEEKING IMMUNITY FROM PROSECUTION PURSUANT TO FLORIDA'S STAND YOUR GROUND LAW PURSUANT TO § 776.032, FLORIDA STATUTES (2014).
>
> GROUND TWO:
> TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBTAIN THE SURVEILLANCE VIDEO AT THE APARTMENT COMPLEX THAT WOULD HAVE SHOWN THAT THE DEFENDANT WAS ATTACKED WITHOUT PROVOCATION RIGHT OUTSIDE THE FRONT DOOR OF HIS APARTMENT.
>
> GROUND THREE:
> TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO MAKE A TIMELY OBJECTION OR ATTEMPT TO SEEK REMOVAL OF A SLEEPING JUROR.
>
> GROUND FOUR:
> TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO REQUEST THAT "FELONY BATTERY" OR " AGGRAVATED BATTERY" BE IDENTIFIED AS THE "FORCIBLE FELONY" THAT MR. LEE WAS ATTEMPTING TO PREVENT.
>
> GROUND FIVE (PART A):
> TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE WHEN HE OPENED THE DOOR TO THE LINE OF QUESTIONING ON

---

[2]  The docket of the Clerk of the United States Supreme Court shows that on or about January 25, 2018, Lee filed an application to extend the time for filing a petition for writ of certiorari. He was given until March 26, 2018, but he never filed a petition.

> WHETHER OR NOT THE DEFENDANT HAD AN AVENUE OF RETREAT.
>
> GROUND FIVE (PART B):
> TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE WHEN SHE FAILED TO OBJECT TO THE PROSECUTOR'S IMPROPER BURDEN SHIFTING DURING CLOSING ARGUMENT.

(Ex. 11 at 3–29).

Lee then filed an amended pro se motion for post-conviction relief containing the same grounds for relief. (*See id.* at 30–58). The trial court issued an order striking in part and reserving a ruling in part on the motion. (Ex. 11 at 59–72). Per the court's instructions, Lee filed another post-conviction motion that included his desired amendments, which were:

> Claim One:
> Counsel Was Ineffective for Failing to File a Pretrial Motion Seeking Immunity from Prosecution Pursuant to Florida's Stand Your Ground Law, Section 776.032, Florida Statutes (2014), Violating the Defendant's 5th, 6th, and 14th Amendment Constitutional Rights.
>
> Claim Three (Part B):
> Counsel was Ineffective for Failing to Make a Timely Objection or Attempt to Seek the Removal of a Sleeping Juror, Violating the Defendant's 5th, 6th, and 14th Amendment Constitutional Rights.

(*Id.* at 73–81). The trial court then summarily denied Claims One, Three (B), Four, Five (A), and Five (B), and ordered the State to respond to Claims Two and Three (A). (*See id.* at 82–146). The State responded, and Lee filed a reply. (*Id.* at 147 –50; 151–222–44). The trial court granted Lee an evidentiary hearing on Claims Two and Three (A) (*see id.* at 245–50; 265–304), and then denied the claims by written order. (*See id.* at 251–60).

4

Lee appealed. (*Id.* at 261–63; Ex. 016). He filed a pro se initial brief containing the same six grounds for relief he raised in his Rule 3.850 motion for post-conviction relief. (*See* Ex. 12). The State filed an answer brief (Ex. 13), and Lee filed a reply brief (Ex. 14). The Second District issued its opinion, per curiam affirmed, in *Lee v. State*, 348 So. 3d 1123 (Fla. Dist. Ct. App. 2022) (Table).  (Ex. 15). Lee sought and was granted an extension of time to seek rehearing. (*See* Ex. 16). The court then denied rehearing. (*See* Ex. 18).

Lee filed the instant pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 by placing it in the hands of prison officials on October 03, 2022, and the Clerk of this Court docketed it on October 07, 2022. (Doc. 1; Ex. 20).[3] He raises one claim of trial court error and seven claims of ineffective assistance of counsel.

## II.  Standard of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). The AEDPA amended 28 U.S.C. § 2254 to create a highly deferential standard for federal court review of a state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

---

[3]  Lee had one year from the date on which his state court conviction became final to file his federal petition for writ of habeas corpus. *See* 28 U.S.C. § 2244(d)(1). Respondent does not challenge the timeliness of Lee's petition. (*See* Doc. 7 at 7 n.2).

> resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), explains this deferential standard:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings

of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

"The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

When the last state court to decide a federal claim issues a reasoned and explanatory opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[A] federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable."). When the relevant state-court decision does not come with reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192.

III. Discussion[4]

**A. Trial Court Error**

**Ground One:**   Lee argues in his first claim that the trial court should have granted his motion for judgment of acquittal and renewed judgment for acquittal. (Doc. 1 at 4). To satisfy the constitutional requirement of due process in a criminal trial, the state must prove beyond a reasonable doubt every fact that constitutes an essential element of the crime charged against the defendant. *In re Winship*, 397 U.S. 358, 364 (1970). The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). The AEDPA's deferential standards govern review of the state court's decision on such an issue. *See, e.g.*, *Owen v. Sec'y for Dep't. of Corr.*, 568 F.3d 894, 918 (11th Cir. 2009) ("Owen has not shown that the Florida Supreme Court's analysis was contrary to, or an unreasonable application of, *Jackson*.").

---

[4]   Respondent argues that Lee's claims for habeas relief are due to be denied as procedurally barred because he failed first to exhaust them in the state courts as they are presented in his federal habeas petition. A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). Lee's arguments, however, do not persuade the Court. Therefore, this Court's "Discussion" addresses only the merits of Lee's claims.

The *Jackson* standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law. *Dorsey v. Burnette*, 319 F. App'x 835, 840 (11th Cir. 2009) (quoting *Jackson*, 443 U.S. at 324 n.16). Although each element of the offense must be established beyond a reasonable doubt, the state is not required to rule out every hypothesis except that of the guilt of the defendant. *Bishop v. Kelso*, 914 F.2d 1468, 1470 (11th Cir. 1990) (citing *Jackson*, 443 U.S. at 316); *see also Jackson*, 443 U.S. at 326). In Florida, a defendant moving for a judgment of acquittal admits not only the facts stated in the evidence, but also every reasonable conclusion favorable to the State that a jury might fairly infer from the evidence. *Lynch v. State*, 293 So. 2d 44, 45 (Fla. 1974). It is the trial judge's task to review the evidence to determine the presence or absence of competent evidence from which a jury could infer guilt to the exclusion of all other inferences. *State v. Law*, 559 So. 2d 187, 189 (Fla. 1989). The federal court will not reweigh the evidence. *Jackson*, 443 U.S. at 319. The trier of fact is responsible for fairly resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts. *Id.* Although the facts as they exist in the record may support opposing inferences, a federal habeas corpus court must presume the jury resolved such conflicts in favor of the prosecution and against the petitioner. *See Heath v. Jones*, 863 F.2d 815, 820 (11th Cir. 1989); *Machin v. Wainwright*, 758 F.2d 1431, 1435 (11th Cir. 1985).

Florida's statute on second-degree murder provides, in pertinent part:

> The unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of

human life, although without any premeditated design to effect the death of any particular individual, is murder in the second degree.

Fla. Stat. § 782.04(2). The State presented sufficient evidence at trial to establish the elements of the offense and that Lee did not act in self-defense when he killed the victim, Porter.

It was undisputed that Porter was with a gathering of other residents of the apartment complex where both he and Lee lived on the night of his death. Several witnesses testified that residents would regularly gather outside their apartments to socialize and drink. (*See* Ex. 1a, at 359; 402; 407–09). Witnesses testified that Porter tended to talk loudly, get "mouthy", or have false courage when he had been drinking. (*See id.*). Kevin Evans ("Evans"), who lived next to Lee, testified that Porter would say things he might not otherwise say if he were sober and could even be belligerent (*Id.* at 356–57, 362). He testified that on the night of Porter's death, as he and another man, Jeff, left the outside gathering and went inside, another resident, Chris Heron ("Heron"), arrived at the gathering. (*Id.* at 357).

Heron testified that he saw Lee arrive, walk up to Porter, and say to him, "You're being too loud. Take your shit upstairs." (*Id.* at 438). Heron testified that Lee appeared pissed off, while Porter appeared to play it off. (*Id.* at 438–39). Lee went inside his apartment, came back outside, and "sucker punched" Porter from behind with his right hand, and Porter fell. (*Id.* at 440–41). Heron heard Lee say, "Oh, you say my girl's cute," and then he heard a muffled "pop," and Porter fell to the ground. (*Id.* at 441–42, 497). Another resident of the complex, Morris Jones, testified that as

he turned to walk back toward Porter and the other men, he saw Porter pop up from the ground and then fall again. (*Id.* at 406).

Lee testified in his defense. He claimed that he shot Porter because he became aggressive and shoved him, and he stated, "That was it. That's all it took." (*See id.* at 513, 532–33, 545–48). However, no evidence came in at trial that Porter threatened Lee with deadly force, to which Lee responded.

The Second District could reasonably deny Lee's instant claim on direct appeal because the State's evidence contradicted Lee's claim of self-defense and was sufficient for the trial judge to submit the case to the jury. *Dunn v. State*, 206 So. 3d 802 (Fla. Dist. Ct. App. 2017). The disputed facts created a jury question regarding Lee's claim of self-defense. *Id.* at 805. Lee claimed Porter was acting aggressively toward him, yet no witnesses ever saw Porter with a weapon.

Moreover, the evidence presented was sufficient to establish that Lee acted with a depraved mind. Notably, without any evidence of a deadly threat, Lee placed a loaded handgun directly against Porter's face and shot him. (*See* Ex. 1a at 624, 631, 636, 638, 640, 658). Under Florida law, the act of pointing a loaded gun at the head of a victim and then firing it has been determined to be an act "imminently dangerous to another and evincing a depraved mind." *Gibbs v. State*, 904 So. 2d 432, 435 (Fla. Dist. Ct. App. 2005) (quoting *Keltner v. State*, 650 So. 2d 1066, 1067 (Fla. Dist. Ct. App. 1995) (finding the act of pointing a loaded weapon in the direction of someone and firing imminently dangerous and evinces a depraved mind).

11

Because the State's evidence was sufficient to establish the elements of second-degree murder and was inconsistent with the defense's theory, the trial court correctly denied Lee's motion for judgment of acquittal and sent the case to the jury. *See Evans v. State*, 26 So. 3d 85, 89 (Fla. Dist. Ct. App. 2010) ("If an inconsistency exists between the defendant's theory of innocence and the State's evidence, then the trial court should deny the motion for judgment of acquittal and allow the jury to resolve the inconsistency.") (citing *Boyd v. State*, 910 So. 2d 167, 181 (Fla. 2005)). Lee fails to demonstrate that the state court's rejection of his claim resulted in an unreasonable application of clearly established federal law or an unreasonable determination in light of the facts. Claim One is, therefore, denied on its merits.

## B. Ineffective Assistance of Counsel

In his remaining claims, Lee asserts that his trial counsel failed to provide effective assistance, thereby prejudicing him. The two-part standard outlined in *Strickland v. Washington*, 466 U.S. 668, 690, 104 S. Ct. 2052, 2066, 80 L. Ed. 2d 674 (1984), governs claims of ineffective assistance of counsel. To make a successful claim, a defendant must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. 466 U.S. at 687. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. To succeed on an ineffective assistance claim, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. There is no reason for a court deciding an

12

ineffective assistance claim to address both components of the *Strickland* test if the defendant makes an insufficient showing on one. *Id.* at 697.

When reviewing a state court's adjudication on the merits of an ineffective assistance claim, federal courts must apply a "doubly" deferential standard. *See Harrington v. Richter*, 562 U.S. 86, 105, 131 S. Ct. 770, 788, 178 L. Ed. 2d 624 (2011) (quoting *Strickland*, 466 U.S. at 689). Federal habeas courts assessing claims of ineffective assistance previously adjudicated in state court, "must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Id.*

**Ground Two:**  Lee asserts that his trial counsel rendered ineffective assistance by failing to file a pre-trial motion seeking immunity from prosecution under Florida's Stand Your Ground statute. (Doc. 1 at 4–5). Although whether appellate counsel was constitutionally ineffective is a question of federal law, when the answer to the question turns on whether counsel should have raised issues of state law, as in Lee's instant claim, section 2254(d) requires the federal court to defer to the state court's decision regarding its own laws. *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (superseded by statute on other grounds).

Federal courts must abide by the state courts' rulings on matters of state law. *Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S. Ct. 1881, 1886, 44 L. Ed. 2d 508 (1975) (citations and footnote omitted). It is a fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on

13

such matters. *See Herring v. Sec'y, Dep't. of Corr.*, 397 F.3d 1338, 1354–55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done[.] . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (quoting *Agan v. Vaugh*, 119 F.3d 1538, 1549 (11th Cir. 1997)).

When a defendant claims that counsel was ineffective for failing to file a motion, the defendant must show that the motion has merit. *See Ferrell v. State,* 29 So. 3d 959, 976 (Fla. 2010). On review of Lee's motion for post-conviction relief, the trial court determined this claim was meritless and, thus, did not warrant an evidentiary hearing:

> In Defendant's amended motion for post-conviction relief, Defendant contends counsel was deficient for failing to file a motion for a Stand Your Ground hearing and that there is a reasonable probability that the outcome would have been different but for counsel's deficiency. Defendant's amended motion then avers all of the facts which he would have testified to at the said hearing. The only additional testimony Defendant alleges he would have testified beyond what was already testified at trial was that Defendant attempted to get away from the victim and diffuse the situation by going to Defendant's car. Defendant claims that when Defendant attempted to head to his car, the victim bent forward and charged Defendant. Defendant alleges that this testimony would have been a basis for counsel to file a motion for a Stand Your Ground hearing. When a defendant claims that counsel was ineffective for failing to file a motion, the defendant must show that the motion has merit. *See Ferrell v. State,* 29 So. 3d 959, 976 (Fla. 2010).
>
> Section 776.012(1), Florida Statutes (2010), provides that a person is justified in using deadly force against another and does not have a duty to retreat if he or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm. Section 776.013(1), Florida Statutes (2010), sets forth a presumption that a person has a reasonable fear of imminent peril of death or great bodily harm if the force is used to prevent the unlawful and forceful entry into the person's home. Section 776.032, Florida Statutes (2010), provides that a person who justifiably uses force to prevent great bodily harm or death is immune from criminal prosecution. At the time Defendant's case was pending, a movant was required to establish entitlement to immunity

14

under the statute by a preponderance of the evidence. *See Leasure v. State,* 105 So. 3d 5, 12 (Fla. 2d DCA 2012).

> This Court must deny this claim because Defendant cannot show that he was prejudiced by counsel's failure to file a pretrial motion for immunity. A pretrial motion to dismiss in this case would not have been meritorious because Defendant asserted this same defense at trial and the jury rejected Defendant's defense. The Court instructed the jury on justifiable use of force pursuant to section 776.012, Florida Statutes. *(See* Exhibit E, pp. 731–32). The jury therefore rejected this defense when they found Defendant guilty as charged. Further, this Court heard testimony that the victim was not in a position physically to pose a threat to the Defendant, testimony that the victim appeared to be attempting to stand back up when Defendant shot him, and testimony that Defendant hit the victim from behind. *(See* Exhibit E, pp. 358, 406, 441). Based on the evidence heard, this Court finds that there is not a reasonable probability that Defendant would have been granted immunity at a Stand Your Ground hearing. Additionally, unlike in trial where the burden of proof is beyond a reasonable doubt, at the time of Defendant's trial, a defendant only needed to establish entitlement to immunity under the Stand Your Ground law by just clear and convincing evidence. Section 776.112, Florida Statutes. (2014). There is not a reasonable chance that the Court would have found that Defendant acted in self-defense by a preponderance of the evidence when the jury rejected that theory beyond a reasonable doubt. Defendant cannot show that he was prejudiced by counsel's failure to file a pretrial motion for immunity. Accordingly, Ground 1 of Defendant's motion is **DENIED**.

(Ex. 11, at 84–85). The record supports the trial court's findings.

The testimony was that Porter had been drinking when Lee confronted him and told him to quiet down or to go back upstairs. Lee did not testify that Porter threatened him in any way. And, there was no evidence from anyone that Porter posed a threat of death or great bodily harm to Lee. The evidence before the jury was that Lee became angry with Porter for failing to quiet down when Lee told him to do so. Lee struck Porter with one blow, which caused him to fall to the ground, and when Porter got up, Lee placed the gun to Porter's face and shot him. Under Florida law, such facts have been found to constitute imminent danger to human life and evince a depraved mind. *Keltner v. State*, 650 So. 2d 1066, 1067 (Fla. Dist. Ct. App. 1995) (finding the act of

pointing a loaded weapon in the direction of someone and firing is imminently dangerous and evinces a depraved mind). The jury, by its verdict, rejected Lee's assertion that Porter posed a threat that led him to shoot in self-defense.

Accordingly, as the Second District affirmed the trial court's findings without comment, the issue is settled: had Lee's counsel filed a motion for immunity from prosecution, it would not have been granted. The state court's decision on the underlying state-law issues is binding on this Court. *Pinkney v. Secretary, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017) (*quoting Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (superseded by statute on other grounds) ("[A]lthough 'the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension,' [the Court] 'must defer to the state's construction of its own law' when the validity of the claim that . . . counsel failed to raise turns on state law."). Thus, a fair-minded jurist could conclude there was no reasonable probability Lee would have prevailed had counsel raised the issue in a motion, as proposed. The state court decision resulted in a reasonable application of *Strickland* under either prong and a reasonable determination of the facts in light of the evidence. Therefore, Ground Two is denied as meritless.

**Ground Three:**  Lee asserts that his trial counsel was ineffective in failing to obtain surveillance video from the apartment complex, as it would have shown that the sequence of events leading up to Porter's death was just as Lee claimed in his trial testimony. (*See* Doc. 1 at 5 –6). Lee maintains that he shot Porter after an unprovoked attack, in a split second, because he was in fear. (*See id.*). He contends that the video

16

would have shown that Porter shoved him, balled up his fists, and blocked his path, and that four or five people surrounded him. (*Id.* at 6).

The trial court conducted an evidentiary hearing on this ground for relief, during which Lee testified that he informed his attorneys about the surveillance cameras over a year before his trial (Ex. 11 at 278). He told his attorney, Sara Callahan (nee Moorhead), that he had been around when the cameras were installed and knew the gym on the complex property did not open until the camera system was up and running. (*Id.* at 279 –80). He also testified that he spent time with the technician who installed the system and saw the monitor and DVR. (*Id.* at 281). Lee claimed it showed the area where he shot Porter. (*Id.*). But Lee did not know how long the DVR saved content (*Id.* at 281).

Lee testified that he told Ms. Callahan about the surveillance video after "probably a few months," or five months after being incarcerated. (*Id.* at 282, 285). He testified that she always told him his request was being worked on and that she would send an investigator. (*Id.* at 283). Lee testified that he learned, maybe about a month before trial, that there was no video, but he also testified that he was never told they could not find any video. (*Id.* at 284, 285).

Ms. Callahan testified that she recalled Lee asking her to investigate an alleged surveillance video and that she sent an investigator to determine whether any video existed. (*Id.* at 297). She added that they learned there was no video surveillance because the system did not work correctly, and management was unsure whether it had ever really worked. (*Id.*). Ms. Callahan testified that she was aware that law

17

enforcement also attempted to obtain a video and that their investigation found none. (*Id.* at 297–98). No one was ever able to get any video. (*Id.* at 298). Ms. Callahan testified that she was unsure when she advised Lee that there was no video surveillance, but that she knew it was before trial. (*Id.* at 298).

> In resolving this ground, the trial court found:

> The Court finds Ms. Callahan's testimony credible and the Defendant's testimony not credible. Ms. Callahan's testimony demonstrates that she sent an investigator to attempt to locate, and obtain the video and that she learned, as a result of that investigation: that no video existed or likely ever existed. She also testified that law enforcement had sought the same video and had been unable to locate or obtain it. Because the evidence shows that Ms. Callahan did the investigation the Defendant claims she did not, the Court concludes that her performance was not deficient.

> Moreover, the Defendant's claim is based on his speculation that a video existed and was exculpatory. The Defendant testified that he had never seen a video or known one to exist, and instead only speculated that an exculpatory video existed. Speculation is insufficient to form the basis for postconviction relief. *Ellerbee v. State*, 23 So. 3d 909, 918 (Fla. 2017).

> This claim is denied.

(*Id.* at 254).

Deference must be given to the state court's credibility determinations, which are presumed to be correct. *See Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir.1998) ("We must accept the state court's credibility determination and thus credit [the attorney's] testimony over" that of the petitioner.); *Devier v. Zant*, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are . . . entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d)."). The AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner must

overcome that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e); *see also Miller-El v. Cockrell,* 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1)"). Regarding counsel's alleged failure to secure surveillance video, Lee fails to overcome the presumption of correctness by clear and convincing evidence.

Notably, the trial court found that Lee's assertion was based on speculation. At the evidentiary hearing, Lee failed to put forth any evidence that surveillance video from the night of the shooting was available, and had counsel secured such, there was any reasonable probability of a different outcome. Thus, this ground remains speculative and does not warrant relief. *United States v. Johnson*, 2012 WL 898675, 14 (N.D. Fla. 2012) (defendant's argument as to a witness's theoretical testimony was based solely on his own conjecture, which is generally not sufficient to garner relief on a claim of ineffective assistance of counsel); *Aldrich v. Wainwright*, 777 F.2d 630, 637 (11th Cir. 1985) (speculation insufficient to carry burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation). The state decision is not contrary to nor did it result in an unreasonable application of *Strickland*. It also did not involve an unreasonable determination of the facts in light of the evidence. Therefore, Ground Three is denied on its merits.

**Ground Four:** Lee asserts that his trial counsel's assistance was ineffective because she failed to object and attempt to remove a sleeping juror promptly. (Doc. 1 at 6–7). Lee raised this ground for relief in his Rule 3.850 motion for post-conviction

19

relief, and the trial court held an evidentiary hearing on it. (Ex. 11 at 248–50; 289–99). During his testimony, Lee stated that his counsel brought to his attention that a juror was asleep. (*Id.* at 289–90). When asked if he observed how long the juror appeared to be sleeping, Lee stated, "at that point I didn't. I just remember who was testifying." (*Id.* at 290). Lee claimed he saw it happen twice when counsel pointed it out to him. (*Id.* at 290–91). Lee testified that his attorneys did not bring the matter to the Court's attention. (*Id.* at 291–92).

When Ms. Callahan was asked if she recalled pointing out to Lee that a juror was sleeping, she testified, "I have no recollection of that." (*Id.* at 298–99). When asked if in her 11 years of practice she has had instances of jurors falling asleep, Ms. Callahan testified, "I have." (*Id.* at 299). She testified that when such an instance occurs, she alerts the trial judge to her observations. (*Id.*). When asked if she had seen a sleeping juror and ignored it, Ms. Callahan testified, "No." (*Id.*). When asked if she ever failed to bring it to the court's attention, Ms. Callahan testified, "No." And when asked whether she would have brought a sleeping juror to the court's attention, had she witnessed it, Ms. Callahan testified, "Yes." (*Id.*).

The trial court then denied Lee's claim in a written order as follows:

> The Court finds Ms. Callahan's testimony credible and the Defendant's testimony not credible. The Court does not believe the Defendant's testimony that Ms. Callahan saw a juror sleeping, told him about it, and then never raised the issue with the trial court. Ms. Callahan's testimony demonstrates that she would have alerted the Court to a sleeping juror had she observed it, in accordance with her general practice. The Court therefore finds that Ms. Callahan never saw a juror sleeping at the Defendant's trial, nor ever told the Defendant that a juror was sleeping during his trial. Because the evidence shows that Ms. Callahan had no reason to raise the issue of a sleeping juror,

the Court concludes that her performance was not deficient. *See Morales v. State,* 308 So. 3d 1093, 1098 (Fla. 1st DCA 2020) (post-conviction court may disbelieve a defendant's testimony about specific conversations and believe trial counsel's testimony about general practice in determining that a defendant had failed to meet his burden of proof to demonstrate ineffective assistance of counsel based on those conversations). This claim is denied.

(*Id.* at 255).

The Second District afforded the trial court's credibility findings deference when it affirmed per curiam on collateral appeal. As for  Lee's counsel's alleged failure to object or attempt to remove a sleeping juror, Lee fails to overcome the presumption of correctness by clear and convincing evidence. Thus, the state court decision resulted in a reasonable application of *Strickland* under either prong and a reasonable determination of the facts in light of the evidence, and Ground Four is denied on its merits.

**Ground Five:**  Lee asserts that his trial counsel rendered ineffective assistance by failing to request the trial court to instruct the jury that felony battery or aggravated battery was the identified forcible felony that he was attempting to prevent. (Doc. 1 at 7). Lee faults his trial counsel for agreeing that no forcible felony had occurred and not requesting the instruction. (*Id.*; Ex. 11, at 49–51).

Lee raised this ground for relief in his Rule 3.850 post-conviction motion, and the trial court summarily denied it as follows:

> Defendant claims that based on the above evidence, the jury could have reasonably found that the Defendant was acting to prevent the commission of a forcible felony pursuant to section 776.012, Florida Statutes. Defendant claims that but for counsel's failure to request a forcible felony instruction, the jury would have been instructed on what constituted a forcible felony and would have been able to consider whether the victim was about to commit either felony battery or aggravated battery. To support [the] claim, Defendant

21

points out that during jury deliberations, the jury asked for the definition of forcible felony. But for counsel's deficiency, the definition of forcible felony and its elements would have been available to the jury during deliberation.

This Court must deny Defendant's claim 4 because it lacks legal merit, as it is refuted by the record. The record reflects that counsel requested that battery be identified as the crime the victim was attempting to commit on the Defendant when the shooting occurred. *(See* Exhibit E, pp. 366–67). The Court subsequently advised counsel that battery could not be the felony that the victim was trying to commit because battery is not a felony, and defense counsel then argued "felony battery" should be identified in the instruction. (*See* Exhibit E, p. 367), The State argued that felony battery would have to have a deadly weapon, serious bodily injury~ or a prior conviction. (*See* Exhibit E, p. 367).

> The felony battery statute, Section 784.041, Florida Statutes, provides:
>
> (1) A person commits felony battery if he or she:
>
> (a) Actually and intentionally touches or strikes another person against the will of the other; and
>
> (b) Causes great bodily harm, permanent disability, or permanent disfigurement.

*Brooks v. State,* 93 So. 3d 402, 403 (Fla. 2d DCA 2012).

> In the instant case, the Court read the justifiable homicide instruction to the jury. (*See* Exhibit E, pp. 731–32; *see also* Exhibit I (jury instructions)). Additionally, there was no evidence that the victim intended to commit felony battery or aggravated battery on Defendant at trial. An attorney's assistance is not rendered deficient through his failure to raise a frivolous point. *Cf. Teffeteller v. Dugger,* 734 So. 2d 1009, 1020 (Fla. 1999) ("Counsel cannot be deemed ineffective for failing to prevail on a meritless issue."). Regardless, counsel argued for felony battery to be included in the instruction. (*See* Exhibit E, pp. 360–67). Accordingly, Claim four is **DENIED**.

(Ex. 11 at 87). The trial court determined no relief was warranted because the record did not establish deficient performance by counsel. When Lee raised his claim on collateral appeal, the Second District issued a silent affirmance. The state appellate court's decision on this state law issue binds the federal court. *Carrizales v. Wainwright*,

699 F.2d 1053, 1055 (11th Cir. 1983) (finding that the Florida Supreme Court's determination that the trial court correctly refused to give a requested jury instruction under Florida law is binding on the federal habeas court).

The Second District could reasonably affirm the trial court's decision because the record established that counsel requested both a battery and a felony battery instruction. However, neither was warranted by the evidence. Because counsel did request the instructions, the state court did not unreasonably conclude that the record refuted Lee's claim and that the claim did not result in an unreasonable application of *Strickland*.

The record establishes that it was not reasonably likely that an instruction for either felony battery or aggravated battery would have made any difference, considering all the evidence of guilt, as well as the lack of evidence that Porter so threatened Lee that he was forced to use lethal force. Thus, the state decision resulted in a reasonable application of *Strickland* under either prong and a reasonable determination of the facts in light of the evidence. Ground Five is denied as meritless.

**Ground Six:**   Lee asserts that his trial counsel provided ineffective assistance when, during Lee's testimony, he opened the door to questioning on whether he had a duty to retreat. (Doc. 1 at 7–8). Lee argues, as he did in his Rule 3.850 motion for post-conviction relief, that counsel, during direct examination, asked Lee, "Did you have any place to go?" Lee responded, "I had no avenue of retreat." (*Id.*; Ex. 11 at 52 –54; *see also* Ex. 1a at 625, line 19–20). Lee contends that this led the state to question Lee about whether he had called the police or could have gone back inside. (Doc. 1 at

23

8). On review of Lee's Rule 3.850 motion, the trial court summarily denied Lee's claim:

> Defendant claims that counsel's question, "Did you have any place to go?" opened the door for the prosecution to ask on cross-examination why Defendant did not contact law enforcement. Defendant's claim fails to show prejudice, as the record refutes it. The record reveals the Court instructed the jury on 3.6(f) "Justifiable Use of Deadly Force." *(See* Exhibit E, pp.739–41). This instruction advised the jury that the Defendant has no duty to retreat if he had a right to be where he was and was not engaged in unlawful activity. The Court presumes that the jury followed these instructions. *Hand v. State,* 188 So. 2d 364, 367 (Fla. 1st DCA 1966) *(*holding that "it must be presumed" that the jury will follow the trial court's instructions, and that the jurors "lived up to their solemn obligation as citizen-jurors in the absence of any indication to the contrary." Therefore, because the jury was properly instructed that Defendant did not have a duty to retreat, there is not a reasonable probability that this line of questioning affected the outcome of the trial. Accordingly, Claim 5A is **DENIED.**

(Ex. 11 at 88). When Lee raised the claim on collateral appeal of the summary denial, the Second District Court issued a silent affirmance. Lee fails to meet his burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground of ineffective assistance of counsel. Therefore, Ground Six is denied on its merits.

**Ground Seven:**  Lee faults defense counsel for failing to object to a comment made by the State, which he claims had the effect of improperly shifting the burden of proof. (Doc. 1 at 8). Lee raised this claim in his Rule 3.850 motion for post-conviction relief, and the trial court summarily denied it as follows:

> In "Part B" of the final ground of Defendant's motion, Defendant claims ineffective assistance of counsel based on trial counsel's failure to object to statements made by the State during closing arguments that inferred the defendant was under an obligation to retreat. *(See* Exhibit E, pp. 739–41). To successfully assert a claim that counsel was ineffective for failing to object to improper comments by a prosecutor, the defendant must demonstrate that the

remarks constitute a reversible error. *See Lugo v. State,* 2 So. 3d 1, 17 (Fla. 2008) (citing *Hodges v. State,* 885 So. 2d 338, 356 (Fla. 2004)). The purpose of a closing argument "is to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence." *Griffin v. State,* 866 So. 2d 1, 16 (Fla. 2003) (quoting *Bertolotti v. State,* 476 So. 2d 130, 134 (Fla. 1984)) (internal quotation marks omitted). "Merely arguing a conclusion that can be drawn from the evidence is permissible fair comment." *Id.* "A prosecutor's argument should be examined in the context in which it was made." *Lubin v. State,* 963 So. 2d 822, 824 (Fla. 4th DCA 2007) (citing *Stancle v. State,* 854 So. 2d 228, 229 (Fla. 4th DCA 2003)). Given the context of the State's comment, it was not improper for the State to argue Defendant could have called the police when he went back in his apartment the first time instead of going back outside if he was actually concerned for his safety. (*See* Exhibit E, pp. 612–30.) Defendant notes that the State's argument was meant to undermine Defendant's argument of self-defense. Contrary to Defendant's claim, however, it is not improper for the State to make such a comment during closing arguments. Indeed, pointing out the inconsistencies in the defense theory is one of the main goals of a persuasive closing argument. *See Griffin,* 866 So. 2d at 16.

Because the comment was not improper, any objection to the comment on the grounds raised by Defendant would have been meritless. Counsel cannot be ineffective for failing to raise a meritless objection. *See Schoenwetter,* 46 So. 3d at 546. Additionally, Defendant cannot be prejudiced by counsel's failure to raise a meritless objection because there is no reasonable probability that a meritless objection, if raised, would have been granted. Accordingly, Claim 5B is **DENIED**.

(Ex. 11 at 88–9).

In Florida, counsel is permitted wide latitude in arguing to a jury. *E.g.*, *Breedlove v. State*, 413 So. 2d 1 (Fla. 1982). To successfully assert a claim that counsel was ineffective for failing to object to improper comments by a prosecutor, Lee was required to demonstrate that the comments constituted reversible error. The affirmance of the trial court's ruling, rejecting Lee's state law-based arguments, settles that the trial court was within its discretion to conclude the State's remarks fell within the ambit of proper comment and did not constitute reversible error, as a matter of state law.

Even if counsel's performance could be deemed deficient for not objecting, Lee fails to demonstrate that the trial court's determination that he failed to show prejudice was contrary to *Strickland* or based on any unreasonable findings of fact. The trial court determined the comment was a permissible conclusion that could be drawn from the evidence. Notably, Lee took the stand in his defense and testified that at the time he shot Porter, he had no place to retreat. (Ex. 1a at 625). On cross-examination, the State followed up on Lee's testimony, where Lee maintained he had no other place to retreat (Ex. 1a at 646–47). Lee testified that it would have been futile for him to retreat to his apartment, as his wife and son were inside. (Id. at 647). During closing arguments, the State argued that despite his testimony to the contrary, Lee had an avenue to retreat. (Ex. 1a  at 666). The State asserted that Lee's assertion that he had nowhere to retreat was not credible. (Ex. 1a at 667).

Given the strong evidence against Lee and the trial court's instructions, Lee cannot demonstrate a reasonable probability of a different outcome at trial had his counsel objected to the State's comments as proposed. The trial court reasonably concluded that this claim fails to satisfy either *Strickland* prong. Lee fails to meet his burden of proving that the state court unreasonably applied *Strickland* or unreasonably determined the facts by denying his ground of ineffective assistance of counsel. Ground Seven is, therefore, denied on its merits.

**Ground Eight:**  In his final ground for relief, Lee asserts cumulative error. (Doc. 1 at 9). However, the question of whether the individual errors of counsel cumulatively deprived Lee of a fair trial is arguably not cognizable before this Court. The Eleventh

Circuit has recognized that a cumulative-error claim may not be cognizable in a federal habeas case based on the current state of Supreme Court precedent. *See Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 & n.3 (11th Cir. 2012) ("We need not determine today whether, under the current state of Supreme Court precedent, cumulative error claims reviewed through the lens of AEDPA can ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law."). The Supreme Court has not addressed the applicability of the cumulative-error doctrine in the context of ineffective-assistance-of-counsel claims. The Court has, however, found, in the context of an ineffective-assistance claim, that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984) (citations omitted).

"The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Mosquera*, 886 F.3d 1032, 1052 (11th Cir. 2018) (quoting *United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir. 2005)). In addressing cumulative error claims, the court "first consider[s] the validity of each claim individually, and then examin[es] any errors . . . in the aggregate and in light of the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." *Id.* (quoting *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012)).

27

However, when a federal habeas petitioner has failed to establish any individual error, there can be no claim of cumulative error. *See id.* (quoting *Morris*, 677 F.3d at 1132) ("[W]here there is no error in any of the trial court's rulings, the argument that cumulative trial error requires that this Court reverse the defendant's convictions is without merit."). *See also Napolitano v. Sec'y, Fla. Dep't of Corr.,* No. 17–10372–E, 2017 WL 7341482, at *5 (11th Cir. Oct. 30, 2017) ("[C]umulative effect analysis should evaluate only matters determined to be in error, not the cumulative effect of non-errors.").

The Eleventh Circuit has made clear, "that where '[t]here [is] no error in any of the [trial] court's rulings, the argument that cumulative trial error requires that this Court reverse [the defendant's] convictions is without merit.'" *Id.* (quoting *United States v. Taylor,* 417 F.3d 1176, 1182 (11th Cir. 2005) (per curiam)) (alterations in original). Accordingly, because Lee is not entitled to relief on any of his individual claims of ineffective assistance of counsel, he is not entitled to relief based on cumulative error. Ground Eight is denied as meritless.

## IV.  Conclusion

1. Lonnie Lee's petition for writ of habeas corpus (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Lee and to **CLOSE** this case.

2. Lee is not entitled to a certificate of appealability ("COA"). Under Section 2253(c)(1), a prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application. Instead, a district court must first

28

issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Lee must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Lee has not made the requisite showing. Finally, because Lee is not entitled to a certificate of appealability, he has no right to appeal *in forma pauperis*.

**DONE** and **ORDERED** in Tampa, Florida on February 2, 2026.

Charlene Edwards Honeywell
United States District Judge

**Copies to:**
*Pro se* Petitioner
Counsel of record

29